This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37940**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**BRUCE GRANILLO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J.C. Robinson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Bruce Granillo appeals his conviction for breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981). Defendant argues (1) the evidence was insufficient to support his conviction; (2) the district court erred by admitting certain prejudicial evidence; (3) the State committed prosecutorial misconduct, depriving Defendant of a fair trial; and (4) cumulative error requires reversal. We affirm.

**BACKGROUND**

**{2}**     This case arises from an office break-in. Surveillance video shows three males walking around the office. The face of one suspect in the surveillance video is partially covered, leaving an area around his eyes and nose visible. At trial, the State sought to prove the individual with the partially covered face was Defendant.

**{3}**     The State published clips of the surveillance video to the jury and introduced images from the surveillance video as exhibits. The State also introduced photos of Defendant, cropped to show only an area around his eyes and nose, similar to the area of the suspect's face exposed in the surveillance video; these photos were placed side-by-side with still image close-ups of the partially-covered face of the suspect from the surveillance video. The State elicited testimony from several witnesses identifying Defendant as the suspect in the surveillance video whose face was partially covered.

**{4}**     Defendant presented evidence he was not the individual in the surveillance video. This evidence included testimony related to data from the GPS tracking device Defendant wore pursuant to his probation—which showed he was not at the scene of the break-in—as well as alibi testimony. The jury convicted Defendant of breaking and entering.

## DISCUSSION

### I.     Sufficiency of the Evidence

**{5}**     Defendant first argues there was insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence, we consider all the evidence admitted, even evidence that may have been wrongly admitted. *State v. Post*, 1989-NMCA-090, ¶ 22, 109 N.M. 177, 783 P.2d 487. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, appellate courts "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (alteration, internal quotation marks, and citation omitted). We also disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We measure the sufficiency of the evidence against the jury instructions given, which become the law of the case. *See State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674.

**{6}**     Here, Defendant only challenges the sufficiency of the evidence identifying him as the suspect in the surveillance video whose face is partially covered. Defendant argues the State's circumstantial evidence indicated only a "possibility" that Defendant committed the crime and that, in light of testimony from Defendant's alibi witnesses and evidence corroborating this testimony, the State failed to prove Defendant's involvement

beyond a reasonable doubt. We conclude a rational trier of fact could have identified Defendant as the individual in the surveillance video whose face was partially covered.

**{7}** At trial, the State presented substantial evidence identifying Defendant. Detective Bascomb, who reviewed the surveillance video, also explained the bases for his identification: (1) Detective Bascomb was familiar with Defendant's appearance, and the suspect in the surveillance video looked directly into the camera; (2) he was familiar with Defendant's voice and identified Defendant's voice in the surveillance video; (3) he identified a "very good friend[]" of Defendant's in the surveillance video, and stated that when he had contact with Defendant in the past it was together with this friend; and (4) he was familiar with GPS devices—which Defendant would have been wearing on his right ankle—and identified in the surveillance video a bulge in the suspect's pants on his right ankle as "extremely similar" to how a GPS bracelet would look. Two other witnesses—one of whom had known Defendant for several years—likewise identified Defendant as the individual in the surveillance video.[1] The State also published clips of the surveillance video to the jury, and a voice in the video can be heard saying, "Hide Bruce[.]" Detective Bascomb testified that he recognized the voice to be that of Defendant's friend.

**{8}** Visual and auditory identification of Defendant was corroborated by testimony describing Defendant's distinctive manner of wearing his pants and the color of his shoes, which matched the suspect in the surveillance video. The suspect in the surveillance video can be seen wearing his pants such that the waistline of the pants falls below his buttocks. Ms. Begay, who oversaw a GPS monitoring program for individuals on probation, testified that she regularly interacted with Defendant as part of the program. Ms. Begay identified a still image of the surveillance video as showing an individual wearing khaki pants Defendant appeared to have previously worn to her office in the same distinctive manner. As to Defendant's shoes, Ms. Begay testified she had previously seen Defendant wearing red high-top hiking shoes in her office and that the red shoes shown in still images taken of the surveillance video were consistent with the shoes she had previously observed Defendant wearing. We therefore conclude there was sufficient evidence identifying Defendant in the surveillance video. Accordingly, sufficient evidence supported Defendant's conviction.

## II.    Evidentiary Issues

---

1Insofar as Defendant invites us review certain evidence de novo, contending that we are in as good a position as the trial court to determine the facts and draw our own conclusions, we decline to do so. We agree that "[w]here the issue to be determined rests upon interpretation of documentary evidence, this Court is in as good a position as the [district] court to determine the facts and draw its own conclusions." *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 13, 303 P.3d 814 (internal quotation marks and citation omitted). In this case, however, the evidence before the district court included both documentary evidence and testimony, so we review for substantial evidence. *Cf. State v. Martinez*, 2018-NMSC-007, ¶¶ 1, 12, 410 P.3d 186 (declining to review de novo the district court's findings of fact in its ruling on a motion to suppress because the evidence before the district court included both documentary evidence and testimony).

**{9}** Defendant next argues the district court erred by admitting certain propensity evidence and other evidence that was prejudicial. Defendant did not object at trial to any of the evidence he contends was improperly admitted, so Defendant's evidentiary claims are unpreserved.

**{10}** Because these evidentiary claims are unpreserved, we review for plain error. *See State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. This Court has held that "plain error is to be used sparingly." *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877. We apply the rule only in evidentiary matters and "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id.* (internal quotation marks and citation omitted). In determining whether there has been plain error, "we must examine the alleged errors in the context of the testimony as a whole." *State v. Barraza*, 1990-NMCA-026, ¶ 18, 110 N.M. 45, 791 P.2d 799.

## A.      Propensity Evidence

**{11}** Defendant argues the district court erred by admitting improper character evidence, which created a grave risk of a conviction on propensity grounds. Defendant contends the district court erred by admitting (1) evidence relating to Defendant's prior convictions, and (2) testimony referring to Defendant's past involvement in the criminal justice system.

## 1.      Defendant's Prior Convictions

**{12}** Defendant argues the district court erred by admitting evidence concerning the nature of his prior convictions for similar crimes. Defendant acknowledges that having testified on direct examination that he had two prior felony convictions, he was subject to impeachment with prior convictions. *See* Rule 11-609(A)(1)(b) NMRA (allowing for the impeachment of a witness by evidence of a criminal conviction and providing that evidence of a prior criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant"). Defendant nonetheless contends it was error to admit additional *details* of his prior convictions for the same and similar crimes, noting that the district court "allowed further testimony as to the nature of the convictions, admitted the judgments into evidence, and published them to the jury." Defendant contends admitting details about the nature of his prior convictions was "extremely prejudicial" and constituted an abuse of discretion, especially in light of his offer to stipulate to the convictions.

**{13}** As discussed, because Defendant did not object to the admission of evidence concerning the nature of his prior convictions for similar crimes, we review for plain error. With respect to the first part of the plain error analysis—whether error occurred at all—we presume that the district court did not abuse its discretion in admitting this evidence. *See State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722 (stating that the district court abuses its discretion when its ruling is "obviously

erroneous, arbitrary and unwarranted" or "clearly against the logic and effect of the facts and circumstances before the court" (internal quotation marks and citations omitted)); *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("There is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." (alterations, internal quotation marks, and citation omitted)). Defendant's argument with respect to whether error occurred at all is poorly developed. It fails to distinguish between Rule 11-609 and Rule 11-404 NMRA. To the extent Defendant argues his prior convictions were not for crimes of dishonesty and that he should not have been impeached with the names of his prior offenses, he has not applied the multi-factor balancing test New Mexico courts use to determine whether impeachment with prior convictions was improper under Rule 11-609. *See State v. Trejo*, 1991-NMCA-143, ¶ 9, 113 N.M. 342, 825 P.2d 1252 (listing factors relevant to a district court's decision whether to admit prior convictions not involving dishonesty for impeachment purposes).

**{14}**   We therefore conclude Defendant has not carried his burden of establishing that the district court abused its discretion. *See id.* ¶ 7 (noting that "where it is evident that there existed reasons for and against the ruling, we may indulge in the usual appellate presumptions to affirm the [district] court"). Even if we were to assume that the district court erred, Defendant has not developed an argument based on plain error to persuade us that admitting evidence concerning the nature of his prior convictions for similar crimes affected his substantial rights. *See State v. Stevenson*, 2020-NMCA-005, ¶ 20, 455 P.3d 890 (noting that it is not the responsibility of the appellate court to address an undeveloped argument or perform research for a party).

## 2.     References to Defendant's Involvement in the Criminal Justice System

**{15}**   Defendant next argues the district court erred by admitting testimony related to Defendant's previous involvement in the criminal justice system. Defendant points to (1) testimony in which Detective Bascomb and Ms. Begay repeatedly emphasized how well they knew Defendant based on their "multiple interactions with him," (2) testimony that Defendant had violated his probation almost immediately, and (3) Ms. Begay's introduction as the program director for the adult drug court. Defendant contends such testimony was irrelevant and prejudicial, and constituted bad act evidence.

**{16}**   Regarding Defendant's argument that Detective Bascomb and Ms. Begay repeatedly emphasized how well they knew Defendant based on their "multiple" interactions with him, Defendant provides no citation to the record. *See* Rule 12-318 NMRA(4) (explaining appellate briefs shall contain "an argument which, with respect to each issue presented, shall contain . . . citations to . . . [the] record proper"). To the extent Defendant is referring to Detective Bascomb's statement that he had contacts with Defendant "multiple times" before the break-in at issue, this statement appears to have occurred during an exchange in which the State was laying foundation for Detective Bascomb's identification of Defendant in the surveillance video based on his familiarity with Defendant's physical appearance and voice. *See State v. Sweat*, 2017-NMCA-069, ¶¶ 21-22, 404 P.3d 20 (stating that "the witness's general level of familiarity

with the defendant's appearance" is relevant under Rule 11-701 NMRA to determine whether a lay witness is more likely than the jury to correctly identify an individual depicted in a surveillance recording). We cannot say admission of this testimony was in error.

**{17}**   Regarding admission of testimony that Defendant had violated his probation, we conclude any error was harmless. In context, the statement appears to have been an inadvertent remark in response to the State's questioning of Defendant's former parole officer, Officer Morales, about the frequency of Officer Morales's contact with Defendant, apparently in an effort to lay foundation for his identification of Defendant in the surveillance video. *See id.*

**{18}**   "We have previously distinguished between inadvertent remarks made by a witness about a defendant's inadmissible prior crime or wrong and similar testimony intentionally elicited by the prosecutor." *State v. Gonzales*, 2000-NMSC-028, ¶ 39, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The prosecutor did not pursue Officer Morales's comment or otherwise exploit the reference, or refer to the comment during closing argument. *See State v. Wildgrube*, 2003-NMCA-108, ¶¶ 21, 24, 134 N.M. 262, 75 P.3d 862 (concluding there was no misconduct on the part of the prosecutor when the state's witness made an unsolicited and possibly inadvertent remark commenting on the defendant's invocation of his Miranda right to silence in part because the prosecutor did not pursue the officer's comment or otherwise exploit the reference, or refer to the comment during closing argument). Even if admission of Officer Morales's comment was error, we conclude it was harmless.

**{19}**   Finally, Defendant challenges Ms. Begay's introduction as the adult drug court program manager, from which, Defendant contends, the jury could have made a prejudicial propensity inference that Defendant was involved in the drug court program. Reviewing this testimony in context, we fail to perceive error in its admission.

**{20}**   Following Ms. Begay's swearing in, the prosecutor asked her where she worked, to which she responded, "the Sixth Judicial Adult Drug Court," and she described her duties to include overseeing the GPS monitoring program, which involved tracking individuals on probation.

**{21}**   Defendant acknowledges that Ms. Begay's "testimony about 'the program' clearly referred to a probation supervision program." Defendant's enrollment in this probation supervision program, which monitored the locations of enrolled individuals using GPS data, was at issue at trial given that Defendant relied on data from his GPS tracking device to show his location on the night of the break-in. Accordingly, we see no error in the admission of this testimony.

**B.     Silent Witness Theory Evidence**

**{22}** Defendant next argues the district court improperly admitted lay testimony from two witnesses, Mr. Gose and Detective Bascomb, about the words, "Hide Bruce. Now." spoken in the surveillance video. Defendant contends that testimony regarding a statement in the surveillance video violated the silent witness theory upon which the evidence was admitted. *See Sweat*, 2017-NMCA-069, ¶ 21 (stating that "[p]hotographic evidence, including surveillance videos, is admissible at trial under the silent witness theory" and that under this theory "the photograph speaks for itself and is substantive evidence of what it portrays" (alterations, internal quotation marks, and citations omitted)). Defendant argues "[n]either of these lay witnesses were better suited than any juror to determine what was said in this video," and this testimony was highly prejudicial to Defendant.

**{23}** Again, even if we conclude that this testimony was improper, given the record as a whole we are not "convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted). The jury also viewed the surveillance video in this case, and our review indicates a reasonable jury could have heard the words, "Hide Bruce" spoken in the video. Moreover, in his closing argument, defense counsel apparently conceded the word "Bruce" could be heard in the video, stating that "there are people in the world named Bruce besides him." Based on these circumstances and our review of the record as a whole, we conclude admission of this testimony did not rise to the level of plain error.

### III.    Prosecutorial Misconduct

**{24}** Defendant next argues the prosecutor's misconduct deprived Defendant of a fair trial. Defendant objects to two courses of conduct implicating improper comments by the prosecutor: using direct examination to testify and lead witnesses and commenting on the credibility of witnesses during closing argument. "We review each of [the d]efendant's allegations of prosecutorial misconduct individually in addition to considering their cumulative effect." *State v. Trujillo*, 2002-NMSC-005, ¶ 48, 131 N.M. 709, 42 P.3d 814.

### A.    Standard of Review

**{25}** "When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we will not disturb the [district] court's ruling on the issue absent an abuse of discretion." *State v. Garvin*, 2005-NMCA-107, ¶ 13, 138 N.M. 164, 117 P.3d 970. "When the [district] court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728.

**{26}** Defendant concedes he did not object to the prosecutor's statements commenting on the credibility of witnesses during closing argument. As to the prosecutor's use of direct examination to "testify and lead his witnesses," however,

defense counsel objected on various occasions, and the district court sustained these objections. The State argues Defendant did not raise any objection based on prosecutorial misconduct, so we should review these statements for fundamental error. We agree with the State.

**{27}** Defendant's objections to the prosecutor's questioning of various witnesses did not raise the issue of prosecutorial misconduct. *See Garvin*, 2005-NMCA-107, ¶ 13 (reviewing the district court's ruling for an abuse of discretion "[w]hen an issue of prosecutorial misconduct is preserved by a timely objection at trial"); *Montoya*, 2015-NMSC-010, ¶ 45 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)). Nor did Defendant move for a mistrial. *See State v. Comitz*, 2019-NMSC-011, ¶ 46, 443 P.3d 1130 (stating that appellate courts "review the denial of a defendant's motion for mistrial based on prosecutorial misconduct for an abuse of discretion" (alterations, internal quotation marks, and citation omitted)). Rather, Defendant objected based on the leading nature of the prosecutor's questioning or on unspecified grounds, and the district court sustained the objections. *Cf. State v. Carrillo*, 2017-NMSC-023, ¶¶ 49-50, 399 P.3d 367 (concluding that the defendant had failed to preserve a claim of prosecutorial misconduct by objecting at various points to witness testimony and requesting a limiting instruction, which the district court granted). We therefore review both of Defendant's prosecutorial misconduct claims for fundamental error.

**{28}** "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Allen*, 2000-NMSC-002, ¶ 95 (internal quotation marks and citation omitted). To hold that fundamental error occurred, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted). With these principles in mind, we turn to each of Defendant's prosecutorial misconduct allegations.

## B.    Editorializing and Leading Witnesses During Direct Examination

**{29}** Defendant first argues that the prosecutor engaged in misconduct during the direct examinations of three State witnesses—Ms. Begay, Officer Morales, and Detective Bascomb—by testifying and leading these witnesses. Defendant's misconduct claim centers around the prosecutor's statements and questions related to these witnesses' identification of Defendant in the surveillance video. Defendant contends that the prosecutor engaged in misconduct by "continuously editorializing and referring to the suspect in the surveillance video as 'he,' 'him,' or 'Mr. Granillo.'"

**{30}** We have reviewed the statements and questions identified by Defendant and we will assume without deciding they were improper. Nevertheless, when viewed in the context of these witnesses' testimonies as a whole—and together with other evidence—

we conclude these statements did not have such a persuasive and prejudicial effect on the jury's verdict that Defendant was deprived of a fair trial. *Allen*, 2000-NMSC-002, ¶ 95; *cf. Sosa*, 2009-NMSC-056, ¶¶ 26, 34 (stating that "context is paramount" in determining whether a prosecutor's improper comments during closing argument constituted reversible error). We explain.

**{31}** As to the prosecutor's statements or questions referring to the suspect in the surveillance video as "he" or "him," there appears to be no dispute the suspect was male. Defendant's brief in chief states the three individuals in the surveillance video were male. The surveillance video, played for the jury, included audio of individuals talking. Our review of the video indicates the voices were male, and that a reasonable jury could have heard the words, "Hide Bruce." As we previously noted, defense counsel acknowledged the name Bruce had been spoken in the surveillance video during closing argument. Thus, any prejudice arising from these statements would seem to be minimal.

**{32}** As to the direct examination of Detective Bascomb, it appears that the detective implicitly identified Defendant as the suspect in the surveillance video *before* the prosecutor asked any of the three questions Defendant challenges. Leading up to the first question, Detective Bascomb testified that, as part of his investigation, he watched the surveillance video, then made contact with Defendant to inform him he was a suspect. At this point the prosecutor asked, "When you saw first the video, did you have any reservations or any doubts about Mr. Granillo being in that?" A reasonable jury could have inferred from this testimony leading up to the prosecutor's question that Detective Bascomb had already identified Defendant in the surveillance video. Thus, in context, it appears the prosecutor's question was an attempt to ascertain the certainty with which Detective Bascomb had identified Defendant rather than an effort to suggest the answer. As to the latter two questions challenged by Defendant, Detective Bascomb clearly identified Defendant in an image of the surveillance video several minutes before the prosecutor asked these questions. *See Trujillo*, 2002-NMSC-005, ¶ 53 (noting that the witness clearly identified the defendant before the prosecutor's improper testimony).

**{33}** Importantly, Detective Bascomb did not merely identify Defendant but also explained *how* he identified Defendant in his own words. *See id.* (concluding that the prosecutor's leading questions about the defendant's identity did not prejudice the defendant in part because the witness "told the story in his own words"). Detective Bascomb stated he identified Defendant in the surveillance video based on familiarity with Defendant's appearance and voice; identification in the video of Defendant's good friend, with whom Detective Bascomb had come into contact when he had contact with Defendant previously; and identification of a bulge in Defendant's pants on his right ankle "extremely similar" to how a GPS bracelet would look. In light of Detective Bascomb's testimony as whole, we find no prejudice to Defendant on the issue of identification from this testimony. As to the six comments Defendant contends were improper during the prosecutor's direct examination of Ms. Begay, we note that three occurred after Ms. Begay identified Defendant in images of the surveillance video.

Moreover, considering Detective Bascomb's detailed identification testimony, Ms. Begay's identification of Defendant was cumulative.

**{34}** When the prosecutor's statements and questions are viewed in the context of these witnesses' testimonies as a whole and together with other evidence—in particular Detective Bascomb's testimony detailing the multiple bases upon which he identified Defendant—we conclude they did not have such a persuasive and prejudicial effect on the jury's verdict that Defendant was deprived of a fair trial. *See Allen*, 2000-NMSC-002, ¶ 95. Accordingly, we conclude the prosecutor's questioning did not constitute fundamental error.

### C. Commenting on Witness Credibility During Closing Arguments

**{35}** Defendant next argues the prosecutor engaged in misconduct during closing arguments by "demoraliz[ing]" Defendant's alibi witness and vouching for the State's witnesses. Regarding Defendant's alibi witness, Defendant points to the following statement made by the prosecutor about Defendant's girlfriend, who testified at trial: "And all of this throughout the time when [Defendant] pleaded guilty to similar offenses on two different cases . . . they continue the relationship which that's probably [going too] wrong." Defendant contends this comment informed the jury that Defendant's girlfriend "was lying because why else would she be in a relationship with a felon" and that she was "covering up for [Defendant]." As to Defendant's claim that the prosecutor vouched for the credibility of the State's witnesses, Defendant points to the following statement: "I don't believe that there is any interest of the witnesses of the State to not come forward." Defendant contends that, since the case was a credibility contest and the State's circumstantial evidence was "hardly compelling," these comments swayed the jury's verdict and denied Defendant a fair trial. Defendant did not object to these comments, so we review them for fundamental error.

**{36}** "We review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted). Both the prosecution and defense are permitted wide latitude during closing, and "the [district] court has wide discretion in dealing with and controlling closing argument." *Id.* (internal quotation marks and citation omitted). "A prosecutor's remarks must, however, be based on the evidence or made in response to the defendant's arguments." *State v. Sena*, 2018-NMCA-037, ¶ 13, 419 P.3d 1240, *aff'd in part, rev'd in part*, 2020-NMSC-011, 470 P.3d 227. Even in cases where the defendant fails to object to a prosecutor's statements during trial, and we are limited to fundamental error review, we consider "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26.

**{37}** "Prosecutors are permitted to comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion—and are not intended

to incite the passion of the jury." *State v. Dominguez*, 2014-NMCA-064, ¶ 23, 327 P.3d 1092. "However, a prosecutor cannot vouch for the credibility of a witness, either by invoking the authority and prestige of the prosecutor's office or by suggesting the prosecutor's special knowledge." *Id.* (internal quotation marks and citation omitted).

**{38}**    We are not persuaded the prosecutor's comment relating to Defendant's girlfriend was improper. The exact wording of the prosecutor's comment is apparently disputed, and our review of the record does not clarify this wording. Regardless, Defendant acknowledges on appeal that "[i]t is slightly unclear as to what the prosecutor is exactly stating here." Because the meaning of the prosecutor's statement is unclear, we cannot conclude the statement was improper.

**{39}**    As to Defendant's contention that the prosecutor engaged in misconduct by vouching for the credibility of the State's witnesses, we do not interpret the prosecutor's statement as invoking the authority and prestige of the prosecutor's office or suggesting the prosecutor's special knowledge. *See id.*; *cf. State v. Pennington*, 1993-NMCA-037, ¶¶ 26-27, 115 N.M. 372, 851 P.2d 494 (concluding that improper vouching occurred where the prosecutor referred to her ethical obligations as a prosecutor, then asserted that a witness was not lying). We therefore conclude the prosecutor's statement about the State's witnesses did not rise to the level of misconduct. Having determined the prosecutor's statements during closing argument did not rise to the level of misconduct, we likewise conclude these comments did not constitute fundamental error.

## IV.    Cumulative Error

**{40}**    Lastly, Defendant contends that cumulative error denied him a fair trial. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *See State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937 ("We must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial."). The doctrine is strictly applied, however, and "cannot be invoked when the record as a whole demonstrates that the defendant received a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). Having carefully considered all of Defendant's claims of error in light of the record as a whole, we are not persuaded that Defendant was deprived of a fair trial. *Cf. Allen*, 2000-NMSC-002, ¶ 117 ("We have noted on several occasions that a fair trial is not necessarily a perfect trial."). Thus, we reject Defendant's claim of cumulative error.

## CONCLUSION

**{41}**    For the foregoing reasons, we affirm.

**{42}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**