2007-NMCA-051

157 P.3d 722

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**MacArthur CAMPBELL, Defendant–
Appellant.**

**No. 24,899.**

Court of Appeals of New Mexico.

Feb. 26, 2007.

Certiorari Granted, No. 30,293,
April 24, 2007.

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant Macarthur Campbell appeals his conviction of criminal sexual contact of a minor (CSCM) and his sentence of three years, plus an aggravation of the sentence by one-third. Defendant asserts two errors on appeal: (1) whether the district court denied Defendant his constitutional right to present a defense when it prohibited two defense witnesses from testifying, and (2) whether the district court's aggravation of Defendant's sentence violated his Sixth Amendment right to a jury trial. We reverse Defendant's conviction and remand for a new trial.

{2} During trial, Defendant offered the testimony of an expert witness of uncontested qualifications to establish the types of circumstances in which a child victim of sexual abuse might inaccurately report experiences as well as ways in which a child's memory of an event may be distorted through outside factors and experiences. The case was one in which the factual evidence was in part equivocal, and in part open to suggestion that the child was coerced into making his statements. The district court excluded the evidence following an offer of proof which followed an objection to the witness by the State directly before the defense presented its case. The district court found that the evidence would not be helpful to the jury, and that without relating scientific studies in which factors affecting victims' veracity to the case at hand, the relevance of the evidence was compromised.

## BACKGROUND

{3} Defendant was convicted of one count of CSCM as a lesser included offense of one of the four counts of Criminal Sexual Penetration of a Minor (CSPM) with which he was charged. He defended his case under the theory that the child's mother, his former girlfriend, had induced the child to lie about being abused to facilitate his exit from her life. The child's mother had died prior to trial, and had not been examined or given a statement as to this issue.

{4} After the State rested its case, Defendant sought to call Dr. Jude Pardee as an expert witness, to which the State objected. The State characterized Dr. Pardee's testimony as a general review of the literature concerning the suggestibility of children and the percentages of false allegations in cases of sexual abuse involving children. The State pointed out that Dr. Pardee would not testify about the facts of the case being tried, and argued that the testimony would be an impermissible comment on the child's credibility.

{5} The defense offered two reasons for calling Dr. Pardee: (1) testimony concerning reliability studies and how frequent false or questionable allegations are shown to exist in the literature; and (2) to "provide the jury information that there are issues in child sex abuse allegation cases that exist with respect to how reliable some of that information is that comes from a small child." The defense also characterized this latter evidence as testimony regarding

> the general research findings on sexually abused children regarding reliability and suggestibility of their reporting incidents of abuse ... regarding children's memory, language development, various ways—children's descriptions of their experiences or their events can be distorted by outside

factors, including, but not limited to, adult suggestion or simply their developmental limitations based on age and being able to accurately . . . perceive events.

Defendant stated that he wished to demonstrate that child witnesses/victims present a different type of witness than other persons who are asked to relate information, and that in light of the victim-witness' conflicting testimony and the impeachment of other witnesses, evidence concerning how children's testimony can be influenced would be material and relevant.

{6} In a somewhat informal hearing on Defendant's offer of proof, the district court took judicial notice of Dr. Pardee, her qualifications, and expertise. There was no dispute that Dr. Pardee was an expert capable of testifying about the subject matter and related psychology. Dr. Pardee was informed as to Defendant's offer of proof thus far, and asked by the court and counsel if she had anything to add concerning the thrust of her anticipated testimony.

{7} Dr. Pardee stated that she would not attempt to assign a certain probability that the child in this case would be testifying wrongly, but would try to provide the jury with the

> general understanding that some accusations against people, that involve young children reporting sexual abuse, are judged to be false, and what are some of the circumstances under which children, because of their tender age and their language development and the way they perceive authorities, that they can be influenced by the number of times they're questioned, by the way that they're questioned and the—these circumstances have led to false reports.

{8} The district court found that Dr. Pardee's testimony would not materially assist the jury to understand the case or a material fact. The district court seemed particularly concerned that the testimony would not tell the jury anything about the case at hand, and might confuse the jury because the testimony would not be specifically about the child. In excluding the evidence, the district court specifically balanced its assessment of the relevance of the evidence against the possibility of prejudice or confusion under Rule 11–403 NMRA, and also stated that in light of the large amount of impeachment in which the defense had engaged, the jury was able to discern the credibility of the victim-witness and his story without assistance.

## DISCUSSION

### Exclusion of Dr. Pardee as Defendant's Expert Witness

{9} Rulings admitting or excluding evidence are generally reviewed for an abuse of discretion. *See State v. Armendariz*, 2006–NMSC–036, ¶ 6, 140 N.M. 182, 141 P.3d 526 (appellate courts review the trial courts admission or exclusion of evidence for abuse of discretion); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (applying abuse of discretion standard of review to cases involving expert testimony under the Federal Rules of Evidence). We would find an abuse of discretion when "the trial judge's action was obviously erroneous, arbitrary and unwarranted." *State v. Williams*, 76 N.M. 578, 582, 417 P.2d 62, 65 (1966). Abuse of discretion has also been defined as being clearly against the logic and effect of the facts and circumstances before the court. *See State v. Bowman*, 104 N.M. 19, 22, 715 P.2d 467, 470 (Ct.App.1986); *State v. Lucero*, 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct.App.1982); *State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993).

{10} There is a difference between expert testimony that is *required* to establish an element of a claim or defense when it would assist the jury to understand issues in the case that are beyond their knowledge, *see, e.g., Allen v. Tong*, 2003–NMCA–056, ¶ 25, 133 N.M. 594, 66 P.3d 963 (medical standard of care; medical causation); *Kevin J. v. Sager*, 2000–NMCA–012, ¶ 15, 128 N.M. 794, 999 P.2d 1026 (discovery of connection between childhood sexual abuse and injury); *Smith v. Village of Ruidoso*, 1999–NMCA–151, ¶ 38, 128 N.M. 470, 994 P.2d 50 (relation of future pain and suffering to subjective injury), and expert testimony that would be *helpful* to increase a jury's existing base of knowledge.

{11} There is no question that the witness was found by the court to be a

qualified expert, and that her testimony was regarded as relevant and based upon accepted theory and method. Dr. Pardee was not crossing any line by either stating that an act of abuse did or did not occur, or that the child's mother did or did not coach the child to give his statements. *See, e.g., Alberico,* 116 N.M. at 163, 861 P.2d at 198; *State v. Salazar,* 2006–NMCA–066, ¶ 8, 139 N.M. 603, 136 P.3d 1013, *cert. granted* 2006–NMCERT–006, 140 N.M. 225, 141 P.3d 1279 (holding that while expert may testify that symptoms are consistent with having sustained sexual abuse, testimony may not be offered to prove victim told the truth or was actually the victim of sexual abuse).

{12} In a case where the victim recanted her accusation during her trial testimony, we affirmed the admission of testimony from an expert about "general knowledge about recantation, [and] about the general characteristics of abused children" when the trial court determined that such testimony assists the trier of fact because the jury would need some assistance in determining why children recant testimony. *State v. Neswood,* 2002–NMCA–081, ¶ 15, 132 N.M. 505, 51 P.3d 1159 (internal quotation marks omitted). New Mexico has decided many cases in which the State has been allowed to present such evidence. *See, e.g., State v. Casaus,* 1996–NMCA–031, ¶ 32, 121 N.M. 481, 913 P.2d 669 (allowing expert to explain how a child remembers an event); *State v. Newman,* 109 N.M. 263, 266, 784 P.2d 1006, 1009 (Ct.App. 1989) (holding that testimony regarding characteristics of child sexual abuse victims is admissible). New Mexico courts have universally upheld admission of this sort of testimony when offered by the State to counter defense assertions of recent fabrication or delayed reporting. *See Alberico,* 116 N.M. at 164–65, 861 P.2d at 200.

■ {13} We have no question that the testimony would have been admissible. The question before us is whether *exclusion* of this testimony was error, and if so, whether its exclusion was sufficiently prejudicial to Defendant as to constitute harmful error. The "liberal thrust" of the rules of evidence exists together with judicial faith in the capability of jurors to sift through information.

This leads our Supreme Court to "believe any doubt regarding the admissibility of scientific evidence should be resolved in favor of admission, rather than exclusion." *State v. Fry,* 2006–NMSC–001, ¶ 55, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). In *Newman,* Judge Hartz's concurrence pointed out that the factors leading to abnormal behavior patterns when child victims of sexual abuse report abuse were unique and as such might be beyond the ability of a normal juror to assess, therefore requiring expert testimony. 109 N.M. at 269, 784 P.2d at 1012 (Hartz, J., specially concurring). Where the evidence is offered in support of the defense's theory of the case, we recognize "a presumption against exclusion of otherwise admissible defense evidence. No other approach adequately protects the right to present a defense." *McCarty v. State,* 107 N.M. 651, 653, 763 P.2d 360, 362 (1988); *see also Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

■ {14} A defendant seeking relief because an avenue for his defense was foreclosed by an evidentiary ruling must show that he was prejudiced by the ruling. *See State v. Wright,* 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972) (stating that an error was not reversible because the defendant did not show prejudice). However, "[n]o more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant." *State v. Orona,* 92 N.M. 450, 452, 589 P.2d 1041, 1043 (1979).

{15} In this case, the district court was demonstrably aware of the federal jurisprudence under Rule 11–702 NMRA that states that if scientific, technical, or other specialized knowledge might assist the trier of fact to understand evidence or determine a fact in issue, a witness qualified as an expert may testify about the issue in the form of an opinion or otherwise. Rule 11–702. It chose, however, to find that her testimony would not "materially assist the jury in this case to understand the evidence nor to determine a fact at issue." Specifically, the district court found that Dr. Pardee's testimony would not assist

in determining whether [the child] had or had not been sexually abused, and/or whether or not he accurately perceived whether or not he had been sexually abused, and/or whether or not he accurately has related whether or not he's been sexually abused, and/or by whom, if he really was sexually abused. I don't find that her testimony would materially assist the jury in determining [the child's] suggestibility or amenability to coaching or suggestibility by others; parents, adult, or authority figures, et cetera.

{16} The district court further found that the jury, in the process of its determination of the credibility of witnesses, was well-equipped by virtue of its "400 years or more of background" to determine the credibility of witnesses where the trial presented them with "a very large amount of facts and evidence produced by both sides," and the defense's "very skilled and thorough impeachment." The court went on to state its view that a plethora of information from scientific studies dealing with other circumstances would not relate to "this particular [D]efendant and these particular facts," assessing the child's credibility, amenability to suggestion, and ability to perceive and recall events, "especially in view of the large amount of impeachment that's here."

{17} We believe the district court was looking in the wrong direction. The question here is not the extent to which Dr. Pardee's testimony would tell us anything directly about the child, but the extent to which her testimony would provide an otherwise important framework in which the jury might regard issues present in the case concerning the context in which the child made various statements. To the extent that the defense hinged its case on the assertion that the child was coerced into making statements by his mother, we hold that due process required the district court to allow the defense to make its case, with Dr. Pardee's testimony as a part.

**Prejudicial Error in Excluding Dr. Pardee's Testimony**

■ {18} "A basic tenet of American jurisprudence is that a defendant is entitled to a fair trial with the right to appear and defend himself." *March v. State*, 105 N.M. 453, 456, 734 P.2d 231, 234 (1987). In accepting this tenet, our Supreme Court has held, "the prejudice which must be raised in a case like this is minimal." *Id.* Furthermore, "[d]enial of a likely defense cannot be anything other th[a]n prejudicial." *Id.*

{19} In *State v. Balderama*, 2004–NMSC–008, ¶ 45, 135 N.M. 329, 88 P.3d 845, our Supreme Court held that the exclusion of a neuropsychologist's testimony regarding neurological deficits was not harmless error. In *Balderama*, the neuropsychologist was the defense's only witness. The defense had referred to the neuropsychologist's testimony in the opening statement, and the trial court acted *sua sponte* to exclude the testimony. *Id.* ¶ 44. The Court held that "[e]rror in the exclusion of evidence in a criminal trial is prejudicial and not harmless if there is a reasonable possibility that the excluded evidence might have affected the jury's verdict." *Id.* ¶ 41.

■ {20} The expert witness testimony is probative in that it would provide the jury an understanding of why the child had conflicting accounts of what had occurred, why a child might be motivated to fabricate a story of sexual abuse and the possible effect that outside influences have on a child reporting sexual abuse. Holding that the testimony was relevant and admissible, as well as essential to the defense, we further hold that the district court's exclusion of Dr. Pardee's testimony constituted prejudicial error. We consider Dr. Pardee's assertion to be accurate that her testimony would be helpful to the jury concerning the factors leading to false reports of abuse. Her pointing to those factors in this case would have been helpful to the jury. The child's mother was beyond the reach of Defendant's cross-examination as to her explanations for the statements overheard by Defendant and others, or her possible motives in making them.

**Denying the Defense the Opportunity to Call the Police Officer Was Not Error**

■ {21} The defense sought to call Officer Archibeque to testify about two incidents

involving the child's mother. The first was a domestic dispute call between Defendant and the mother in which the mother gave a false name to the officer. The second was about a month after Defendant had moved out, in which the mother had given her correct name, but the incident involved another man than Defendant. Defendant urged that in light of the testimony of the State's witnesses that no other man had resided with the mother than Defendant, the evidence—the latter incident particularly—gave credence to his theory that the mother concocted the sexual abuse scenario as a way to get him out of the picture.

{22} The defense presented this as an offer of proof to the court, which excluded the testimony as speculative and irrelevant. We agree with the district court. The fact that the mother had gotten in a fight with another male at her apartment subsequent to Defendant's arrest, and had at different times given different names to Officer Archibeque during his investigations do not tend to make what Defendant tries to prove—her motive of trying to get him out of her life—more or less factually probable. Rule 11–401 NMRA (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *State v. Duncan,* 113 N.M. 637, 641, 830 P.2d 554, 558 (Ct.App.1990) ("Relevance does not exist in a vacuum; instead, it is the logical relationship between evidence and a proposition in issue that the party seeks to prove."). There is no evidence that the man was part of the mother's life *prior* to Defendant's arrest, and the mother's lying to the officer on one occasion was not shown to relate to any other fact in issue. Absent an abuse of discretion, we will not disturb the district court's ruling. *See Cent. Sec. & Alarm Co. v. Mehler,* 1996–NMCA–060, ¶ 38, 121 N.M. 840, 918 P.2d 1340.

**Defendant's Aggravated Sentence**

{23} We do not need to address this issue since we are reversing and remanding for a new trial. We leave it to the district court

should there be another conviction to determine whether our Supreme Court's opinion in *State v. Lopez,* 2005–NMSC–036, 138 N.M. 521, 123 P.3d 754, has survived the United States Supreme Court's opinion in *Cunningham v. California,* —— U.S. ——, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007).

{24} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and IRA ROBINSON, Judges.