This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40635**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**ALBERTO ORDAZ-FONSECA,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Court Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellee

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** A jury convicted Defendant Alberto Ordaz-Fonseca of one count of Criminal Sexual Penetration of a Minor, two counts of Criminal Sexual Contact of a Minor, and one count of Voyeurism (Victim under 18). *See* NMSA 1978, §§ 30-9-11(D)(1) (2009), 30-9-13(B)(1), (C)(1) (2003), and 30-9-20(A) (2007). On appeal, Defendant presents three arguments: (1) the district court infringed on his Sixth Amendment[1] constitutional

---

[1]Although Defendant cited to Article II Section 14, of the New Mexico Constitution in his brief in chief, we limit our review to the Sixth Amendment because Defendant did not argue that the New Mexico

right to present a defense by excluding evidence of Victim's sexual orientation and recordings of her safehouse interviews, both of which Defendant contends would have placed Victim's veracity into question, and by limiting the testimony of Defendant's expert; (2) the district court abused its discretion by admitting expert opinion testimony during the State's rebuttal; and (3) the district court committed cumulative error. We affirm for the following reasons.

**DISCUSSION**

**{2}**     Because this is a memorandum opinion and the parties are familiar with the case on appeal, we discuss the facts only as they become necessary to our analysis.

**I.      The Exclusion of Evidence Did Not Deprive Defendant of His Constitutional Right to Present a Defense**

**{3}**     According to Defendant, the district court deprived him of his Sixth Amendment right to present a defense by excluding evidence of Victim's sexual orientation and recordings of her safehouse interviews and by limiting the testimony of his expert. According to Defendant, Victim's sexual orientation and safehouse interviews would have presented evidence of Victim's motive to fabricate her accusations against Defendant. "Claimed violations of the Sixth Amendment right to confrontation are reviewed de novo." *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110. We generally review exclusion and admission of evidence for an abuse of discretion. *See State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722 (defining an abuse of discretion as action that was "obviously erroneous, arbitrary and unwarranted" or "clearly against the logic and effect of the facts and circumstances before the court" (internal quotation marks and citation omitted)). "Where the evidence is offered in support of the defense's theory of the case, we recognize 'a presumption against exclusion of otherwise admissible defense evidence. No other approach adequately protects the right to present a defense.'" *Id.* ¶ 13 (quoting *McCarty v. State*, 1988-NMSC-079, ¶ 9, 107 N.M. 651, 763 P.2d 360). "A defendant seeking relief because an avenue for [their] defense was foreclosed by an evidentiary ruling must show that he was prejudiced by the ruling." *Campbell*, 2007-NMCA-051, ¶ 14. In doing so, "no more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant." *Id.* (alteration, internal quotation marks, and citation omitted).

**A.      The District Court Did Not Err by Excluding Evidence Regarding Victim's Purported Sexual Orientation.**

**{4}**     Defendant claims that the district court should have admitted testimony regarding Victim's sexual orientation (of which there is no evidence in the record) to support his

---

Constitution afforded him greater protection than the United States Constitution. *Cf. State v. Nance*, 2011-NMCA-048, ¶ 11, 149 N.M. 644, 253 P.3d 934 (limiting review to protection under the United States Constitution where no argument on appeal was made that the New Mexico Constitution provided greater protection).

theory that Victim fabricated her accusation of sexual assault in order to "strike back at her mother," who purportedly disapproved of Victim's sexual orientation.

**{5}** Specifically, Defendant claims that evidence of Victim's alleged sexual orientation was necessary to show *why* she had an unhealthy relationship with her mother, which in turn would have provided jury with a motive behind Victim's accusations of abuse against Defendant.[2] The district court excluded evidence of Victim's sexual orientation on relevancy grounds during the cross-examination of Victim's mother.

**{6}** The State reports in its brief that it has no information or belief of what Victim's sexual orientation is and our review of the record reveals that Defendant failed to make a record revealing Victim's sexual orientation, whatever it may be. "It is [the] defendant's burden to bring up a record sufficient for review of the issues [they] raise[] on appeal." *State v. Padilla*, 1980-NMCA-141, ¶ 7, 95 N.M. 86, 619 P.2d 190. When faced with an incomplete record, we indulge every presumption "in favor of the correctness and regularity of the lower court's judgment." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 19, 121 N.M. 562, 915 P.2d 318. Here the district court excluded the evidence of Victim's sexual orientation on relevancy grounds, which we will address later in this memorandum opinion. We first address the State's arguments.

**{7}** The State claims that this Court should affirm the district court's ruling because (1) Defendant did not file a motion seeking admission of the evidence revealing Victim's sexual orientation under New Mexico's rape shield laws, NMSA 1978, § 30-9-16 (1993) and Rule 11-412 NMRA; and (2) even if Defendant had filed a motion under the rape shield laws, "the trial court would have been right to deny" the motion because Defendant "failed to establish that this evidence [was] material or relevant to his claims or that its probative value outweighs its potential for prejudice and confusion."

**{8}** New Mexico's rape shield laws preclude the admission of a "victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct . . . unless, and only to the extent the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value." Section 30-9-16(A). A defendant seeking to admit such evidence "shall file a written motion prior to trial" and the court shall hear the motion prior to trial during an in-camera hearing to determine whether the evidence is admissible. Section 30-9-16(C).

**{9}** The record confirms that Defendant did not file a motion seeking admission of Victim's sexual orientation under the rape shield laws. Consequently the parties did not make arguments supporting or rejecting the application of the rape shield laws and the district court's ruling was not based on the rape shield laws. We therefore interpret the State's argument to affirm the district court's ruling as right for any reason. See *State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the 'right for any reason' doctrine, we may affirm the district court's order on grounds not relied upon by

---

[2]Defendant is partnered with Victim's aunt but they are not married.

the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)).

**{10}** We decline to apply the right for any reason doctrine because Defendant did not make a record of what Victim's sexual orientation was; neither party addressed before the district court whether evidence of sexual orientation falls under the rape shield laws; and the question of whether evidence of sexual orientation alone may be protected under our rape shield laws has yet to be decided in a formal opinion.

**{11}** Having thus declined to analyze the State's argument regarding the applicability of the rape shield laws in this instance, we consider whether excluding evidence of Victim's sexual orientation precluded Defendant from presenting the defense that Victim fabricated her accusations against him in order to get back at her mother. We conclude that any evidence regarding Victim's sexual orientation was not necessary for Defendant to argue that Victim fabricated her accusation against him, in order to "strike back at her mother for harsh and unfair mistreatment," and was therefore irrelevant. *See* Rule 11-401 NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action."). We reach this conclusion because Defendant introduced evidence that Victim and her mother had a tumultuous relationship and suggested that Victim accused Defendant as a result. Defense counsel elicited testimony from Victim's mother about the fights they had and questioned Victim about the violent nature of her relationship with her mother, going so far as to directly ask Victim whether she had accused Defendant to make her mother angry. Defendant therefore made the argument he claims to have been denied, the basis for the contentious relationship was not relevant to that argument, and thus, he suffered no demonstrable prejudice. *See Campbell*, 2007-NMCA-051, ¶ 14.

**{12}** Moreover, any probative value of the evidence was served by allowing evidence that the relationship between Victim and her mother was contentious and additional information about the basis for the discord "would not have increased the probative value of the evidence and was far outweighed by its prejudicial effect." *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 23, 117 N.M 434, 872 P.2d 852; *cf. id.* (affirming exclusion of evidence regarding romantic relationship where probative value of such evidence was limited to demonstrating that a relationship existed between the individuals in question, and testimony established that they had a relationship as friends). *See generally* Rule 11-403 NMRA (allowing for exclusion of relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice). We therefore conclude that the district court did not err in excluding evidence of Victim's alleged sexual orientation. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 19.

**B.      The District Court Did Not Err by Excluding Recordings of Victim's Safehouse Interviews**

**{13}** Defendant additionally argues the district court should have introduced recordings of two safehouse interviews with Victim "for three purposes: (1) to expose

serious flaws in the investigation that led to the prosecution; (2) to show [Victim's] desire to deport [Defendant] and thus calling into question [Victim's] credibility and the veracity of the allegations; and (3) to show the jury that when asked if she made the allegations to make her mother angry, [Victim] hesitated." Defendant claims that he was deprived of a defense "because the recordings would have helped to corroborate for the jury what she said during the second [safehouse] interview."

**{14}**    We begin by noting that Defendant never sought to have the recordings admitted. In fact, the section of the transcript to which Defendant directs this Court to support his assertion that his trial counsel "explained to the trial court that he needed to introduce the recordings of the interviews to show the jury that the accusations were fabricated" concerned the admission of a Sexual Assault Nurse Examiner (SANE) examination report and testimony from a SANE nurse who did not examine Victim. We thus find that Defendant failed to preserve his overarching argument that the district court should have admitted these recordings. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted).

**{15}**    Nevertheless, we acknowledge that the district court both permitted and curtailed testimony about the safehouse interviews, and consider whether the presentation of that evidence, and the limitations imposed thereon, impacted Defendant's constitutional right to present a defense. *See Campbell*, 2007-NMCA-051, ¶ 14 ("A defendant seeking relief because an avenue for his defense was foreclosed by an evidentiary ruling must show that he was prejudiced by the ruling."). In particular, Defendant contends that the testimony of his expert about the procedures used in the safehouse interviews was improperly truncated.

**{16}**    We begin with Defendant's argument that he "was prevented from showing the jury that the genesis of the prosecution—the [safehouse] interviews—were deeply flawed and that these serious defects produced unreliable accusations tainting the entire case." Defendant further asserts that the district court "restricted" the expert's testimony and that he was therefore "not allowed to present expert testimony regarding the import of the flaws in the '[safehouse] interviews.'" Although the jury did not review the recordings of the interviews, Defendant presented extensive expert testimony about proper safehouse interview techniques and the apparent flaws in the interviews conducted with Victim. The "restrictions" imposed by the district court, based on Defendant's citations in the brief in chief, appear to involve sustained objections to the expert testifying directly about credibility or restating Victim's alleged statements from the interview. Defendant offers no argument or authority to undermine the district court's rulings in these respects. Thus, we conclude that Defendant had an adequate opportunity to cast doubt on how the interviewers obtained information from Victim and call into question the substance of that information.

**{17}** We next turn to Defendant's argument that the second safehouse interview contained evidence that would have indicated that Victim fabricated her accusation to have Defendant deported. Based on the record before us, it appears Defense counsel misconstrued the content of the second safehouse interview by asking Victim to affirm that she told the interviewer that she wished to see Defendant deported. The district court struck Victim's response.

**{18}** Although the district court struck Victim's response to Defendant's question regarding deporting Defendant, which could have provided evidence of Victim's motive to fabricate, Defendant elicited testimony from his expert witness, who in addition to testifying about the claimed impropriety of the safehouse interviews, testified that, during the second safehouse interview, Victim and the interviewer could be heard laughing when the interviewer stated, "We are going to ship him off." The jury thus heard evidence that Victim laughed upon hearing another person express a desire to have Defendant deported, which a jury could conclude was evidence of Victim's motive to fabricate accusations against Defendant. Therefore, Defendant had an opportunity to present this theory of his defense.

**{19}** Finally, we consider whether Defendant was able to show that Victim had a motive to accuse Defendant to retaliate against her mother based on information in the interviews. Our review shows that the district court allowed Defendant to question Victim directly on this point. Defendant used this opportunity to present his theory that Victim had accused him in order to anger her mother.

**{20}** Even in the absence of the recordings, Defendant offered evidence on each of his theories of defense regarding the alleged failures in the investigation and Victim's motive to fabricate. He therefore suffered no prejudice. *See Campbell*, 2007-NMCA-051, ¶ 14. As such, we conclude that the district court did not violate Defendant's right of confrontation or otherwise deprive him of any of his purported lines of defense and turn to Defendant's next series of arguments.

## II. The District Court Did Not Abuse Its Discretion by Admitting Expert Testimony During the State's Rebuttal

**{21}** Defendant asserts the district court erred by allowing the State's rebuttal expert witness to testify. "Genuine rebuttal evidence consists of evidence on new matters asserted in the defense's case." *State v. Simonson*, 1983-NMSC-075, ¶ 29, 100 N.M. 297, 669 P.2d 1092. "Ascertaining whether the rebuttal evidence is in response to new matters established by the defense, however, is a difficult matter at times. Frequently true rebuttal evidence, in some degree, will overlap and coincide with the evidence in the [s]tate's case[ ]in[ ]chief." *Id.* We review this issue for an abuse of discretion. *See State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. "Broad discretion in the admission or exclusion of expert evidence will be sustained unless manifestly erroneous." *Id.* (internal quotation marks and citation omitted).

**{22}** Defendant first states that the doctor who testified as a rebuttal witness was not qualified to serve as an expert witness in this case because he "lacked expertise on the subjects that were addressed" in his case in chief, but makes no further argument in that regard. Primarily, Defendant challenges the relevancy of the doctor's testimony upon a claim that it was not permissible rebuttal testimony. The State tendered a doctor, a licensed professional clinical counselor with a Ph.D. in higher education administration, as an expert in sexual assault victim behavior who could speak broadly to victims' reasons for delaying disclosure of abuse. The doctor had been qualified as an expert witness on the subject of sexual assault victim behavior five times and had testified as an expert three or four times in New Mexico. Defendant notes that the doctor testified that all of his counseling experience was in a purely therapeutic setting and that he did not have experience conducting safehouse interviews. Defendant did not challenge the doctor's qualifications at trial on the subject of sexual assault victim behavior and instead argued that the doctor's testimony was not relevant.

**{23}** The district court permitted the doctor to testify as an expert regarding sexual assault victim behavior. The doctor testified about abuse occurring at the hands of family members, as well as sexual assault victims' tendency to delay disclosure of abuse; that victims of sexual assault often choose not to disclose abuse right away because of feelings of guilt, family or social pressure, or because their abuser still has access to them; and noted that victims most often suffer abuse at the hands of family members because of trust and access. Defendant claims this testimony exceeded the proper scope of the State's rebuttal because Defendant never raised a delayed disclosure theory during his case in chief, nor did he contest the fact that he had access to Victim.

**{24}** The record reveals that Defendant effectively raised the delayed disclosure theory throughout the trial. He repeatedly suggested that Victim's accusations lacked validity because they arose approximately five years after the abuse began. Defense counsel questioned both Victim and her mother at length about Victim's failure to disclose until she engaged in the safehouse interviews. We therefore conclude that the doctor's expert testimony regarding delayed disclosure did not exceed the scope of permissible rebuttal testimony.

**{25}** We otherwise acknowledge that most of the doctor's general observations about abuse committed by family members did not directly relate to an issue raised by Defendant during his case in chief. However, his testimony coincided with the State's case in chief that revealed Defendant was like a family member. Additionally Defendant made no objection during the doctor's testimony, *see Montoya*, 2015-NMSC-010, ¶ 45. Nor has Defendant identified any prejudice resulting from the doctor's remarks, especially considering that Defendant did not contest the fact that he had access to Victim. *See Alberico*, 1993-NMSC-047, ¶ 58. Finally, the doctor noted that ongoing access by a perpetrator may result in delayed disclosure. Therefore, his comments did not exceed the scope of permissible evidence and we conclude that the district court did not abuse its discretion in permitting the State to present the doctor's expert testimony on rebuttal.

### III.    No Cumulative Error Occurred

**{26}**    Defendant claims that the district court committed cumulative error because "the combined impact of [its] rulings produced an impermissibly skewed trial." "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Romero*, 2019-NMSC-007, ¶ 45, 435 P.3d 1231 (internal quotation marks and citation omitted). Having concluded that the district court did not commit error by excluding evidence of Victim's sexual orientation, Defendant never sought to introduce recordings of the safehouse interviews, and that the content of the doctor's expert rebuttal testimony was relevant and permissible, we hold that no cumulative error occurred.

### CONCLUSION

**{27}**    For the forgoing reasons, we affirm.

**{28}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**