This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41294

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALIKA ARISUMI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** This case concerns the sale of a 2008 Ford Escape (the car) by Defendant Alika Arisumi to Victim. Defendant appeals his convictions of improper sale, disposal, removal or concealing encumbered property, contrary to NMSA 1978, Section 30-16-18 (2006), and fraud, contrary to NMSA 1978, Section 30-16-6 (2006). Defendant argues: (1) the district court infringed on his right to present a defense when it prevented him from introducing evidence of a written, unsigned contract showing his understanding of the agreement with Victim at the time of sale; (2) the district court abused its discretion in

failing to exclude unfairly prejudicial evidence with no probative value during trial; **(**3) the district court erred in imposing a probation term of five years in its written order, after announcing a three-year term of probation during the sentencing hearing; and lastly that (4) the district court fundamentally erred when it imposed restitution of $8,400. We affirm.

## BACKGROUND

{2}      Defendant originally purchased the Escape for $7,000. He financed the purchase of the car through Loco Credit Union. According to the terms of his loan, Defendant was not permitted to sell the car. Approximately three years after Defendant purchased the car, Defendant's wife at the time, Faith Arisumi (Ms. Arisumi), posted an advertisement for the sale of the car on her Facebook page, describing the payment term as follows: "4000 OBO, 118K miles, [c]lean, [a]utomatic, willing to consider payments under certain conditions."

{3}      Victim, who knew Ms. Arisumi from church, saw the posted advertisement, contacted Ms. Arisumi, and agreed to purchase the car. Victim made a down payment of $300 and agreed to make monthly payments of $275. It is undisputed by the parties that there was no signed contract for the purchase of the car and that Victim paid a total of $4,275 in monthly payments to Defendant for the car.

{4}      The remainder of the underlying facts concerning the terms of the sale are heavily contested by the parties. According to Defendant, as reflected in a written, unsigned contract he created at the time of sale, "the offer was always $4[,]000 in cash up front or assume the payments on [the car,] a total of approximately $6[,]200." Defendant maintains that Victim "failed to make all of the monthly payments on a timely basis, and fell behind on or missed multiple payments." Consequently, "after [Victim] violated the payment terms verbally agreed to, [Defendant] notified the police that [the car] would be repossessed," and it was.

{5}      According to the State, Victim claimed that she was shown the unsigned contract for the first time when Defendant demanded more money for the car "claiming falsely that it reflected their original agreement for the sale." After Victim had made payments on the car totaling $ 4,275, Defendant told Victim that "she still owed him money on the car under their original agreement[,] and that when she did not pay him more, [Defendant] had [the car] towed from where she parked it one day." After the car was repossessed, Victim reported it as stolen.

{6}      Leading up to trial, Defendant and Victim—during separate interviews—both referred to the unsigned written contract to a police officer investigating Victim's report of the stolen car. The State filed a motion in limine to prevent [Defendant] from mentioning at any stage of the trial and to prevent [him] from mentioning any testimony that the parties had a written contract" and further "that there not be mentioned any alleged written contract as no written contract exists with any signature" of Victim. A hearing was held and the district court granted the State's motion.

**{7}**     A jury trial was held and Defendant was convicted of both crimes charged.

## DISCUSSION

### I.     Defendant's Rights Were Not Violated by the Exclusion of the Unsigned Contract

**{8}**     On appeal, Defendant argues that the district court denied his constitutional right to present a defense that he had no fraudulent intent when it erroneously granted the State's motion in limine.[1] According to Defendant, he "believed that the offer was always that [Victim] would pay $4,000 in cash[,] up front[,] or assume the payments on the [Escape]." Moreover, though Defendant acknowledges that "the unsigned agreement was not a valid contract, he [claims he] needed it to show his understanding of what [Victim] agreed to and what he believes [Ms.] Arisumi had negotiated with [Victim]." Citing to *State v. Campbell*, 2007-NMCA-051, ¶ 14, 141 N.M. 543, 157 P.3d 722, Defendant asserts that the district court's exclusion of evidence of the unsigned contract foreclosed part of his defense. For the reasons that follow, we conclude the exclusion of the unsigned contract was not reversible error.

**{9}**     "We review the exclusion of evidence for abuse of discretion. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Maples*, 2013-NMCA-052, ¶ 13, 300 P.3d 749 (internal quotation marks and citations omitted). "An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion and a demonstration that the error was prejudicial rather than harmless." *State v. Smith*, 2016-NMSC-007, ¶ 46, 367 P.3d 420 (internal quotation marks and citation omitted).

**{10}**     In its motion in limine, the State moved the district court "to prevent the defense from mentioning at any stage of the trial and to prevent the [D]efendant from mentioning in any testimony that the parties had a written contract in this case" and further asked "that there not be mentioned any alleged written contract as no written contract exists with any signature" of Victim. The State asserted that when Victim refused to pay more money on the car and to pay off the remainder of Defendant's loan, Defendant

---

[1]The State argues this issue is unpreserved by Defendant. According to the State, the issue is unpreserved namely because: (1) Defendant's response to the State's motion in limine did not adequately preserve the issue for appeal; and (2) the objection made by Defendant during trial was "equivocal." Although we agree with the State that a party aggrieved by a ruling on a motion in limine must typically renew their objection at trial, *see State v. Carrillo*, 2017-NMSC-023, ¶ 23, 399 P.3d 367, Defendant *did* renew his objection at trial. During trial, Defendant effectively asked the district court to reconsider its ruling on the motion when he asked to make a proffer to the district court to bring in evidence of the unsigned contract through Defendant's own testimony in order to show Defendant's state of mind at the time he created the contract. The State concedes this point in its briefing on appeal stating, "Only at Defendant's actual trial did defense counsel state any concrete objection to the ruling on the motion in limine." During trial, just as in Defendant's response to the State's motion, Defendant argued that the contract was important to show his state of mind. Defendant's reasserted argument at trial concerning the motion was sufficient to preserve this issue for appeal. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked.").

"produced a contract that he argued the [V]ictim agreed to, but never signed . . . [D]efendant [then] began to threaten to sue the [V]ictim and refused to give any title" to Victim. The State sought to exclude evidence of the unsigned contract believing that Defendant would "attempt to use the unsigned contract to argue that it encompassed the agreement of the parties." In its motion, the State asserted that no signed contract between the parties ever existed and that to allow Defendant to mention such an unsigned contract would "confuse and mislead the jury" and would be impermissible hearsay, falling under no exceptions.

{11} In response, Defendant argued that the State misstated his purpose in wanting to show evidence of the contract—he stated the contract "reflect[ed his] intent and understanding" at the time of the sale and was created at the time of the sale. Defendant also asserted that Ms. Arisumi gave Victim the keys for the car "without insisting that [Victim] sign the contract." Defendant acknowledged the unsigned contract was invalid, but nevertheless asserted that Ms. Arisumi "failed to sell the [car] on the terms agreed [t]o by the parties insofar as [she] failed to insist upon [Victim's] signing the contract before giving possession" of the car—reflecting a breach of faith by Ms. Arisumi.

{12} During the hearing on the State's motion, Defendant argued that evidence of the unsigned contract may become relevant and further asserted that he would not testify that there was a written contract between the parties, nor that the terms of the unsigned contract were the terms of the agreement. The State reasserted that the unsigned contract was impermissible hearsay. Defendant did not argue otherwise. The district court agreed with the State, granting its motion, but left open the possibility that its ruling may change based on the testimony presented at trial.

{13} Days into the trial, during a bench conference out of the presence of the jury and after the State presented its case in chief, Defendant again brought the unsigned contract to the district court's attention. Specifically, Defendant asked to make a proffer to the district court for Defendant to testify about the contract, clarifying he would testify to his state of mind at the time the contract was created rather than it being an enforceable contract, that Defendant tried to get the contract signed, and that he would testify about the date the contract was created. The State again reasserted its objection to any mention of the contract. Ultimately, the district court declined to reconsider its order granting the State's motion in limine and reasserted that the order prohibited showing the physical contract as well as any mention of it during trial. The district court did clarify that Defendant could testify to his intent about payment and whether he memorialized his intent about payment in writing—but that Defendant could not be asked whether he wrote something down purposefully to get Victim to sign it or otherwise alluding to such writing being a contract.

{14} We conclude that Defendant has failed to demonstrate that the district court's exclusion of the unsigned contract constituted error. The State raised inadmissibility of the unsigned contract on two grounds—first, that the unsigned contract was impermissible hearsay under Rule 11-801 NMRA, and second that the unsigned

contract was irrelevant, asserting it would "confuse and mislead the jury" under Rule 11-403 NMRA. The district court granted the State's motion. On appeal, Defendant advances a theory about the relevance of the unsigned contract, but makes no legal argument addressing the two bases for exclusion of the unsigned contract. Even assuming Defendant is correct that the evidence at issue is relevant, not all relevant evidence is admissible, and Defendant has not given us any reason to conclude that the district court lacked the discretion to exclude the evidence pursuant to the hearsay rules and Rule 403. *See* Rule 11-402 NMRA (stating that although relevant evidence is generally admissible, such evidence may be inadmissible where it is contrary to constitutional, statutory, or rule provisions).[2] We "will not review unclear arguments, or guess at what [a party's] arguments might be." *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

## II.    The District Court Did Not Err in Allowing Victim's Statements

**{15}**    Defendant next argues that the district court erred in failing to exclude various statements made by Victim during trial. The contested statements made by Victim concerned her actions taken after the car was repossessed. In particular, during trial, the State asked Victim about the day the car was repossessed. The State asked Victim where she was when it was taken, and she answered that she was at her surgeon's office. Within this same line of questioning, the State asked Victim how she managed to get home after the car was repossessed. Victim testified that after it was taken, Victim and her family had to wait for about an hour to get a cab and then stated, "We had to get car seats to put the grandkids in the cab." At this point, Defendant objected to Victim's testimony, arguing the evidence had little probative value and was highly prejudicial. The district court, in overruling Defendant's objection, found that Victim described her family and what they went through following repossession of the car and thus the court stated, "So I'm not going to tell [the jury] to disregard any of it . . . but move on."

**{16}**    Defendant asserts that Victim's testimony is irrelevant and unfairly prejudiced his defense under Rule 11-403. The State responds that "no reversible error can be discerned from the jury's having learned of [Victim's] need to call a cab, wait about an hour, and get child seats after Defendant had her car removed from where she had parked it." Even if the district court erred, the State asserts, Defendant has failed to demonstrate that any such error warrants reversal. We agree with the State.

**{17}**    We review the decision of a district court to admit evidence under Rule 11-403 for abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8.

---

2In his brief in chief, Defendant incorrectly asserts that the State's "arguments against the admission of [the contract] went to the weight of it, not its admissibility." We disagree. In its motion in limine, the State clearly argued the contract was inadmissible. First, the State argued that the unsigned contract "is hearsay to prove the matter asserted in the contract, i.e., that the terms of the unsigned contract [were] what the [D]efendant and the [V]ictim agreed to" under Rule 11-801 NMRA. The State further asserted that the contract falls under no exceptions to the hearsay rule. Moreover the State raises an additional ground of inadmissibility of the contract—namely, "[t]o allow mention of [the] unsigned contract . . . [would] confuse and mislead the jury" under Rule 11-403.

"An abuse of discretion occurs when the [district court's] ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{18}** "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice." *Otto*, 2007-NMSC-012, ¶ 16 (alteration, internal quotation marks, and citation omitted). In accordance with Rule 11-403, a district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* ¶ 14. "Because a determination of unfair prejudice is fact sensitive, much leeway is given [district court] judges" in making that determination. *Id.* ¶ 14. (internal quotation marks and citation omitted). Although Victim's testimony did not establish an element of either of the charged offenses, it provided context to the underlying factual events surrounding the repossession of the car. Moreover, Victim's testimony on this topic was brief and isolated and lasted about ten seconds. We cannot say Victim's brief testimony was unfairly prejudicial under the circumstances. *See State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845 ("Any doubt whether the evidence is relevant should be resolved in favor of admissibility.").

**{19}** Defendant fails to demonstrate how such testimony introduced a danger of unfair prejudice—he merely asserts that the testimony was elicited "to inflame the passions of the jury, to provoke hostility against [Defendant], and around sympathy for [Victim]." According to Defendant, Victim's testimony "could easily pose the litany of dangers that Rule [11]-403 was designed to protect against" but fails to develop a legal argument demonstrating that such testimony constituted unfair prejudice under the specific facts and circumstances of this case. *See Headley*, 2005-NMCA-045, ¶ 15. Accordingly, we cannot say the district court's balancing, pursuant to Rule 11-403, was clearly contrary to logic or reason and cannot conclude that the district court abused its discretion. *See Otto*, 2007-NMSC-012, ¶ 9.

### III.    The District Court Did Not Err by Imposing a Probation Term of Five Years

**{20}** Defendant also argues that the district court erred by imposing a probation term of five years in the written judgment and sentence after announcing a three-year term of probation at the sentencing hearing. According to Defendant, "it was error for the [district] court to arbitrarily increase the probation term without holding a hearing which [Defendant] could attend" and such error "warrants vacatur of the sentence and remand with instructions to enter a written judgment that [corresponds] with the . . . pronounced probation term of three years." The State questions entirely whether the district court intended the "three year[]" term to apply to the suspended sentence or to the probationary period, as Defendant contends. Additionally, the State argues that even if the district court "did indeed call for three years of probation at the hearing, but then intentionally changed the term to five years in the written sentence, [it] would have been within [the district court's] rights to do so." We agree with the State.

**{21}** We review the district court's sentencing determination for abuse of discretion. *See State v. Cumpton*, 2000-NMCA-033, ¶¶ 9-10, 129 N.M. 47, 1 P.3d 429. In the written order, the district court sentenced Defendant to five years of supervised probation. Regardless, even if Defendant is correct that the district court announced that the probation term was three years, our courts have long recognized, with one exception not argued here, that "[t]he [district court] judge ha[s] the authority to change the orally-pronounced sentence prior to entry of [the] written judgment and sentence." *State v. Rushing*, 1985-NMCA-091, ¶ 6, 103 N.M. 333, 706 P.2d 875; *see State v. Jenkins*, 2024-NMCA-019, ¶ 24, 542 P.3d 835. Ultimately, "it is the written sentence which controls." *State v. Kenneman*, 1982-NMCA-145, ¶ 9, 98 N.M. 794, 653 P.2d 170; *see also Rushing*, 1985-NMCA-091, ¶ 6 ("An oral pronouncement is not a final judgment and is subject to change until reduced to writing."). Accordingly, we find no error in the district court's written order sentencing Defendant to five years of probation.

## IV. The District Court Did Not Fundamentally Err by Imposing Restitution

**{22}** Finally, Defendant argues the district court fundamentally erred when it imposed a restitution amount of $8,400 when, he asserts, the evidence only showed Victim's out of pocket payments for the car did not exceed $4,275. Defendant concedes, and the State agrees, that this issue was not preserved below. Accordingly, he asks that we review for fundamental error. We decline his invitation to do so—Defendant failed to develop an adequate legal argument on appeal concerning this claimed error. *See* Rule 12-321(B)(2)(c), (d) NMRA (providing that appellate courts have discretion to review unpreserved questions involving fundamental error or fundamental rights). Beyond citing to the relevant law and one relevant portion of the record where Victim testified to the amount she paid for the car, Defendant asserts that the imposed restitution amount of $8,400 "has neither legal nor factual support" and "is a miscarriage of justice" without connecting the law to the facts of this case. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings [to] support generalized arguments" appellant must "demonstrate through discussion of facts, arguments, and rulings appearing in the record" how the district court erred.). There is simply a lack of developed argument to permit an adequate fundamental error review on appeal. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("[I]t is [the d]efendant's burden on appeal to demonstrate any claimed error below."); *see also State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (stating appellate courts apply the fundamental error doctrine "only under exceptional circumstances and only to prevent a miscarriage of justice").

## CONCLUSION

**{23}** For the foregoing reasons, we affirm.

**{24}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**